Commonwealth of Pennsylvania, Appellant *v.* Earl Howard Lyles, Jr., Appellee.

Argued June 6, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Carl Vaccaro*, with him *John T. Kalita, Jr.*, Deputy Attorney General, and *LeRoy S. Zimmerman*, Attorney General, for appellant.

*Michael C. Shields*, with him *Morris Gerber, Gerber, Gerber & Shields*, for appellee.

OPINION BY JUDGE MACPHAIL, September 2, 1983:

Earl Howard Lyles, Jr. (Appellee) escaped from the State Correctional Institution at Graterford (SCIG) in

November of 1977. When recaptured, Lyles sustained multiple gunshot wounds, as a result of which he is now a permanent paraplegic.

Subsequent to his recapture, Lyles was sentenced by Judge HONEYMAN, of the Court of Common Pleas of Montgomery County, to a term of twenty to forty years for a series of robberies. As part of the plea bargaining agreement reached between Lyles and the Commonwealth, and in recognition of the inability of SCIG to properly treat Lyles for his paraplegic condition, Judge HONEYMAN ordered that Lyles' sentences be served at a United States Government hospital[1] until such time as Lyles was considered sufficiently recovered, when he would then resume serving his sentences at a designated state correctional institution.

Numerous attempts were made to have Lyles placed in a United States Government hospital all met with failure. During this time, Lyles was confined in the hospital ward of SCIG. Lyles subsequently filed a "Petition for Modification of Sentence" under the provisions of Section 1 of the Act of May 31, 1919 (Act), P.L. 356, *as amended,* 61 P.S. §81, in the Montgomery County court. That section reads, in pertinent part, as follows:

> Whenever any convict or person is confined in any ... penal institution, under conviction or sentence of a court,... and it is shown to a court of record by due proof that such convict or person is seriously ill, and that it is necessary that he or she be removed from such penal institution, the court shall have power to modify its sentence ... and provide for the confinement or care of such convict or person in some other

---

[1] Lyles is an honorably discharged veteran of the United States Armed Services and was believed eligible for admission to a Veterans Administration (VA) Hospital.

suitable institution where proper treatment may be administered. Upon the recovery of such person, the court shall recommit him or her to the institution from which he or she was removed.

A hearing was held on Lyles' petition on September 5, 1980, before Judge HORACE DAVENPORT,[2] at which time testimony was received concerning both the lack of physical therapy for Lyles at SCIG[3] and the physical harm Lyles suffered due to SCIG's inability to provide adequate treatment. Judge DAVENPORT entered an order on June 11, 1981, modifying[4] the previously imposed sentence of twenty to forty years to a sentence of thirty years probation, releasing Lyles into the custody of his parents pending admission to an appropriate rehabilitative institution at the cost of the Commonwealth.

In its appeal to this Court[5] the Commonwealth does not dispute Judge DAVENPORT's determination that Lyles was not and could not receive necessary treatment while at SCIG; neither does the Commonwealth challenge the sentencing judge's authority to modify Lyles' sentence to thirty years parole under the Act. The only issue presented to us is whether, pursuant to the provisions of the Act, the trial court could order the Commonwealth to pay for rehabilitative treat-

---

[2] Judge HONEYMAN having retired in the interim.

[3] Or at any other facility within the state system.

[4] After consultation with Judge HONEYMAN.

[5] The Commonwealth's appeal was originally filed to the Superior Court. However, that Court, with Judge WIEAND dissenting, transferred the case to this Court, believing that the case "necessarily involves the Commonwealth's Department of Public Welfare, which has received bills for payment for appellee's therapy, and the Bureau of Corrections, whose medical treatment capabilities are in question." *Commonwealth v. Lyles,* Pa. Superior Ct. , , 450 A.2d 159, 160 (1982). *But see* note 6, *infra.*

ment. Under the specific facts of this case we hold that it could not; therefore, we will reverse that portion of the court's order.[6]

Lyles' paraplegia, the medical condition which makes SCIG an unacceptable physical environment, was not incurred as a result of his prison detainment by the Commonwealth. Furthermore, Judge DAVENPORT did not find that Lyles had suffered an additional *permanent* physical harm due to the inadequacy of treatment facilities at SCIG.[7] We are thus faced with a situation in which a felon who has been released from the correctional system due to that system's inability to provide needed care seeks payment for what may amount to a lifetime of medical treatment from the correctional system for an illness which is not of the system's making.

While the correctional system is duty bound to arrange for all the necessary medical care of persons within its control, *see City of Revere v. Massachusetts General Hospital*, 51 U.S.L.W. 5008 (1983), and *Estelle v. Gamble*, 429 U.S. 97 (1976), the correctional

---

[6] We take great pains to emphasize that we are not here determining whether SCIG could care for Lyles, nor are we determining whether the Commonwealth or any other governmental body may be responsible for Lyles' health care costs under other statutory provisions. (Lyles' brief indicates that most of Lyles' rehabilitative care costs are covered by Social Security, Medicare, and medical assistance payments through the Department of Public Welfare. However, as the fact of these payments is not of record, we shall not, as Lyles suggests, dismiss the case as moot.)

[7] In the instant case, there was evidence presented in the form of medical reports which showed that the Appellee was suffering serious phsyical harm as the result of the inadequate treatment he was receiving at Graterford. Based on these reports, the Court, in its discretion, concluded that the only means by which the appellee could be prevented from suffering serious *and* permanent injury would be to release him to a suitable medical facility. Slip op. of the trial court, at 7.

system is not a medical provider and should not be considered *solely* liable for the expense of treatment of every person who at some point is placed in the system. *Id.* While we do not define, as a matter of law, when the correctional system would be liable for the costs of necessary medical care, we are of the opinion that the present circumstances do not trigger the Commonwealth's liability under the Act.

### ORDER

The order of the Court of Common Pleas of Montgomery County dated June 11, 1981, in the above captioned matter, is reversed to the extent that it places the cost of rehabilitative therapy upon the Commonwealth pursuant to Section 1 of the Act of May 31, 1919, P.L. 356, *as amended*, 61 P.S. §81.